1   Gregory G. Petersen, Esq., Bar No. 77744
    Terri N. Schallenkamp, Esq., Bar No. 191869
2   **THE PETERSEN LAW FIRM**
    **A LAW CORPORATION**
3   2755 Bristol Street, Suite 280
    Costa Mesa, California 92626
4   Telephone:  714/708-8000 Fax: 714/708-8010

5   Attorneys for Plaintiffs

6

7                           ORIGINAL

8                  **UNITED STATES DISTRICT COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10

11  MICHAEL L. KIMPEL, et al.,      )  CASE NO. CV 93-3441 GHK  (RNBx)
                                    )  CASE NO. CV 98-10245 GHK  (RNBx)
12              Plaintiffs,         )
                                    )  **STIPULATED JUDGMENT**
13  vs.                             )
                                    )
14  WILLIE WILLIAMS,                )
    individually, and in his        )
15  official capacity, et al.,      )
                                    )
16              Defendants.         )
    _____    )
17  MICHAEL C. HUFF and JOHN DOE,   )
                                    )
18              Plaintiffs,         )
                                    )
19  vs.                             )
                                    )
20  BERNARD PARKS, individually     )
    and in his official capacity;   )
21  CITY OF LOS ANGELES, and        )
    DOES 1 through 10, inclusive,   )
22                                  )
                Defendants.         )
23  _____    )

24      Having considered the Settlement Agreement and Release

25  between plaintiffs and class members and the defendants, and the

26  entire record in the above-encaptioned actions, and, upon joint

27  application of plaintiffs and class members and the defendants,

28  ////

FILED
CLERK, U.S. DISTRICT COURT
APR 4 2000
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
MAR 31 2000
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT
APR - 5 2000
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

1  by their attorneys, it is hereby ORDERED, ADJUDGED AND DECREED

2  as follows:

3      (1)  The Court hereby approves the terms of the Settlement

4  Agreement and Release as fair, reasonable, appropriate, and in

5  accordance with law, and hereby incorporates by reference herein

6  such Settlement Agreement and Release attached hereto as Exhibit

7  "A";

8      (2)  Consistent with said Settlement Agreement and Release,

9  this action is hereby dismissed with prejudice; provided,

10  however, that the Court will retain jurisdiction for the purpose

11  of enforcing compliance with the terms of the Settlement

12  Agreement and Release and this Final Order and Judgment.

13

14  Dated: ___3|31___, 2000          THE PETERSEN LAW FIRM
                                      A Law Corporation
15

16

17                                   By _____
                                        Terri N. Schallenkamp
18

19  Dated: March 31, 2000            LIEBERT CASSIDY

20

21

22                                   By: _____
                                        Brian P. Walter
23

24

25  Dated: 4/4, 2000
                                     UNITED STATES DISTRICT COURT JUDGE
26

27  T:\TNDIV\Lappl\Lisa\PLEADING\stipulatedfinaljmt.wpd

28

                              2

# SETTLEMENT AGREEMENT AND RELEASE

## RECITALS

In 1993, a number of police officers in the Los Angeles Police Department brought suit against the City of Los Angeles, a municipal corporation, and its then Chief of Police, Willie Williams.  Pursuant to Federal Rules of Civil Procedure, Rule 25(d), Bernard Parks, the current Chief of Police, was substituted as the successor in interest in place and instead of Willie Williams.  Plaintiffs sought relief for an alleged violation of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, in regard to the payment and use of overtime, in an action entitled *Michael L. Kimpel, et al. v. Willie Williams, et al.*, U.S. District Court, C.D. Cal. No. CV 93-3441-GHK(RNBx) ("the *Kimpel* litigation");

One provision of the FLSA, 29 U.S.C. § 216(b), allows employees to join an FLSA representative collective action by filing their consents to join, and over 6,200 present or former LAPD officers joined the *Kimpel* litigation prior to the District Court-imposed deadline of December 4, 1997;

In 1998, a second lawsuit was filed by police officers in the Los Angeles Police Department against the City and its Chief of Police, entitled *Michael C. Huff, et al. v. Bernard Parks, et al.*, U.S. District Court, C.D. Cal. No. CV 98-10245-GHK-(RNBx)("the *Huff* litigation"), alleging that the City violated the provisions of the FLSA regarding payment and use of overtime;

Over 200 current or former police officers have joined the *Huff* litigation as the allegations in the *Kimpel* and *Huff* lawsuits are essentially the same, although not every claim is alleged by every plaintiff;

The *Kimpel* and *Huff* plaintiffs claimed that the City has not paid cash FLSA overtime within the time required by the FLSA, and the parties disputed whether the FLSA specifically addresses when overtime compensation must be paid, although in 1972 the United States Department of Labor ("DOL") issued 29 C.F.R. § 778.106. which states that payment "may not be delayed for a period longer than is reasonably necessary for the employer to compute and

EX. A 1-41
3

1   arrange for payment of the amount due and in no event may payment be delayed beyond the next

2   pay day after such computation can be made ...";

3       The plaintiffs contended that 29 C.F.R. § 778.106 is a federal regulation, while the City

4   contended that it is an interpretive bulletin pursuant to *Brooks v. Village of Ridgefield Park*, 185

5   F.3d 130, 135-36 (3d Cir. 1999);

6       The plaintiffs contended that their cash FLSA overtime was systemically paid in an

7   untimely manner, the City denied the allegation, and the District Court ruled on January 26, 1998

8   that the City had violated 29 C.F.R. § 778.106 and the FLSA;

9       Plaintiffs additionally claimed that the City denied requests made by officers to use their

10  FLSA compensatory time off ("CTO") in violation of the "unduly disruptive" standard of the

11  FLSA, 29 U.S.C. § 207(o)(5). The City claimed that requests were only denied when the granting

12  of the request would have imposed an unreasonable burden on the City's ability to provide

13  adequate levels of police services, and the District Court did not make any determination of

14  whether those claims are valid;

15      Plaintiffs further asserted three additional theories regarding the City's alleged denials of

16  requests to use CTO. The first theory asserted that compensation of sworn employees with CTO

17  violated the FLSA because the parties did not enter into an enforceable agreement for CTO

18  pursuant to 29 U.S.C. § 207(o)(2)(A)(i). The second theory asserted that the City's policies and

19  practices regarding the accrual, use and record keeping of CTO violated the FLSA because the

20  terms of the parties' MOU and the City's implementation of those terms violated the FLSA. The

21  third theory asserted that a denial by the City of a request to use CTO constituted non-payment of

22  overtime wages in violation of the FLSA. The District Court ruled on February 3, 1999 that

23  liquidated damages were available to plaintiffs if they prevailed on the third theory;

24      The *Kimpel* plaintiffs claimed that the City improperly compensated them with CTO in

25  lieu of cash compensation for overtime worked during the civil unrest in Los Angeles in 1992.

26  The City contended that the officers' CTO was cashed out as soon as federal funds became

27  available to the City;

28      The *Kimpel* plaintiffs claimed that the City did not properly invoke the FLSA's partial

Ex A 2-41

42996.1                                                      2-16-00 Settlement Agreement

1   exemption for law enforcement personnel set forth at 29 U.S.C. § 207(k) and that they were
2   entitled to overtime after working forty hours in a workweek. The City contended that it properly
3   adopted the 7(k) exemption in 1986, and the plaintiffs were entitled to overtime after working
4   171 hours in a 28 day work period. The District Court ruled that the City did properly adopt the
5   7(k) exemption;

6        Had the *Kimpel* and *Huff* cases not settled, the parties expected years of continued
7   litigation at a cost of millions of additional dollars in attorneys' fees. The settlement was reached
8   after more than eight months of extensive negotiations which included numerous settlement
9   conferences with the Court;

10       Had these cases not settled as set forth hereinafter, the parties were anticipating an
11   immediate trial on two particular aspects of the litigation: a jury trial on the plaintiffs' claim that
12   the City's payment of overtime was wilful and a bench trial on the City's assertion of the defense
13   of good faith. The parties were also anticipating that following the trial on the City's payment of
14   overtime, the claims of plaintiffs that they were unlawfully denied the use of CTO would have to
15   be tried, which could have entailed depositions and trials numbering in the thousands, including
16   individual discovery and trial of each claim by each officer that a request to use CTO was
17   improperly denied. The parties anticipated that this aspect of the litigation alone would have
18   consumed years of litigation at immense cost to both sides;

19       The parties fully expected that whatever the outcome in the District Court, there was a
20   high probability of appeal by both sides on numerous issues, including the issue of whether the
21   City properly adopted a 7(k) exemption, the issue of whether the City paid overtime in a timely
22   manner, and the issue of whether liquidated damages are available for violations of 29 U.S.C. §
23   207(o)(5). The parties also took into account the unpredictability of recovery, which for late
24   payment of overtime could have been as great as full liquidated damages (payment of the entire
25   late overtime again) or as little as nothing, depending on whether the City was able to establish
26   that it acted in good faith pursuant to 29 U.S.C. § 260. The parties view this settlement as a
27   compromise of the risks attendant to both sides in continuing the litigation;

28       The parties hereby enter into the following Settlement Agreement:

Ex. A 3-47

1    **1.    PARTIES**:

2    This Settlement Agreement is made by and between the named Plaintiffs in *Michael L.*

3    *Kimpel, et al. v. Willie Williams, et al.,* CV 93-3441 GHK (RNBx) and all persons who

4    have filed a consent to join the *Kimpel* class action (hereinafter "*Kimpel* Plaintiffs"), and

5    MICHAEL C. HUFF and all persons who have filed a consent to join the *Michael C. Huff, et al.*

6    *v. Bernard Parks, et al.,* CV 98-10245 GHK (RNBx) (hereinafter "*Huff* Plaintiffs") class action,

7    and the City of Los Angeles, (hereinafter "City"), a municipal corporation. The *Kimpel* and *Huff*

8    actions have been consolidated by the Court. This action is based on the Fair Labor Standards

9    Act (hereinafter "FLSA.") Plaintiffs and Class Members agree for the purposes of this settlement

10   to dismiss with prejudice without any determination of merits, Bernard Parks and Willie

11   Williams, individually and in their official capacities as defendants in this action prior to the

12   execution of this Agreement, each of whom shall waive all rights against all parties for matters

13   arising from these cases or the pursuit thereof.

14   The Court has received a few consents to join which were illegible and/or unintelligible.

15   Despite reasonable efforts to identify the signators, the Court and the parties have been unable to

16   do so. As a result, the Court is unable to identify the individuals involved and cannot certify

17   them as members of any Class in this Agreement. The Court has ordered that their claims are

18   dismissed without prejudice. (A copy of such Dismissal Order is attached hereto as Exhibit "A").

19   **2.    DEFINITIONS**:

20       **2.1    LAPD**:

21   As used in this Agreement, "LAPD" refers to the Los Angeles Police Department.

22       **2.2    SWORN EMPLOYEE:**

23   As used in this Agreement, "sworn employee" refers to a sworn employee of the LAPD

24   holding the rank of lieutenant or below.

25       **2.3    LAPPL**:

26   As used in this Agreement, "LAPPL" refers to the Los Angeles Police Protective League,

27   the exclusively recognized employee organization and bargaining unit for sworn employees of

28   the LAPD holding the rank of Lieutenant or below.          Ex A 4-41

**2.4   CURRENT MOU:**

1
2
As used in this Agreement, "current MOU" refers to Memorandum of Understanding No.
3
24, Police Officers, Lieutenant and Below Representation Unit, with the City in effect on
4
December 14, 1999.

**2.5   MODIFIED MOU:**

5
6
As used in this Agreement, "modified MOU" refers to the Memorandum of
7
Understanding No. 24, Police Officers, Lieutenant and Below Representation Unit with the City
8
as a result of this Settlement Agreement as of the date of execution of this Agreement.

**2.6   FLSA:**

9
10
As used in this Agreement, "FLSA" refers to the Fair Labor Standards Act of 1938, 29
11
U.S.C. §§ 201-219 and the Portal to Portal Act of 1947, 29 U.S.C. §§ 251-262.

**2.7   OVERTIME:**

12
13
As used in this Agreement, unless otherwise indicated, "overtime" refers to both FLSA
14
overtime and non-FLSA overtime.

**2.8   FLSA OVERTIME:**

15
16
As used in this Agreement, "FLSA overtime" refers to hours actually worked by a sworn
17
employee of the LAPD during a 28-day work period (deployment period) which exceed 171
18
hours.

**2.9   NON-FLSA OVERTIME:**

19
20
As used in this Agreement, "non-FLSA overtime" refers to the compensation of a sworn
21
employee with overtime pursuant to the current MOU for any hours worked or activities which
22
are not FLSA overtime hours.

**2.10   CTO:**

23
24
As used in this Agreement, "CTO" refers to compensatory time off hours credited to a
25
sworn employee's CTO time banks.  CTO includes both FLSA CTO and non-FLSA CTO hours
26
unless otherwise indicated.

27   //
28   //

Ex. A 5-41

2-16-00 Settlement Agreement

42996.1

**2.11  FLSA CTO:**

As used in this Agreement, "FLSA CTO" refers to hours actually worked by a sworn employee during a 28-day work period which exceed 171 hours and which are credited in CTO time banks, as allowed in 29 U.S.C. § 207(o).

**2.12  NON-FLSA CTO:**

As used in this Agreement, "non-FLSA CTO" is defined as hours which are credited to a CTO time bank for a sworn employee that are not compensation for hours actually worked, as that term is defined by the FLSA, by a sworn employee during a 28-day work period which exceed 171 hours.

**2.13  OLD TIME BANK:**

As used in this Agreement, "old time bank" refers to hours of CTO acquired by sworn employees prior to October 8, 1989, as set forth in Article 6.2, section A, of the current MOU. The old time bank is further divided into hours accrued at one and one half times the hours worked and hours accrued at straight time.

**2.14  NEW TIME BANK:**

As used in this Agreement, "new time bank" refers to hours of CTO acquired by sworn employees on and after October 8, 1989, as set forth in Article 6.2, section B, of the current MOU. The new time bank is further divided into hours accrued at one and one half times the hours worked and hours accrued at straight time.

**2.15  LATE PAY:**

As used in this Agreement "late pay" and "late paid" refers to all hours of overtime worked by a sworn employee which were compensated later than permitted by the FLSA.

**2.16  CLASS COUNSEL:**

As used in this Agreement, "Class Counsel" refers to Gregory G. Petersen, Esq., the attorney representing the *Kimpel* and *Huff* Plaintiffs/Class Members.

//
//
//

Ex.A 6-41

42996.1                                               2-16-00 Settlement Agreement

### 2.17   CASH OUT

For purposes of this Agreement, the term "cash out" refers to the process by which accrued CTO is debited from a Plaintiff and/or Class Member's CTO time banks, and paid to the Plaintiff and/or Class Member in a payroll check.

### 3.   DESIGNATION OF CLASSES.

The individuals who filed a consent to join the consolidated *Kimpel* and *Huff* class actions are collectively known as the "Class Members" and are further divided into five classes set forth in paragraphs 3.1 through 3.5 below.  Each Class Member must have been a sworn employee at some point during the two years prior to his or her joining the *Kimpel* or *Huff* class actions to be eligible for inclusion in the class.  Each of the members of one of the five classes listed herein is similarly situated in the claims brought in this action and allege the same or similar bases for liability in this case, though individual members may have varying alleged amounts of damages.

### 3.1   *KIMPEL* LATE PAY CLASS:

Each sworn employee who joined the *Kimpel* action is a member of the *Kimpel* Late Pay Class if the employee had any amounts of late paid overtime, as that term is defined in this Agreement, at any time from two years prior to his or her opting into the *Kimpel* action until the end of LAPD Deployment Period 12 of 1997.  Each member of this class, which numbers in excess of 5,000 members, has elected to be bound by the decisions of the Court in this matter. The *Kimpel* action was closed by the Court to new Class Members who had not signed and transmitted a consent to join to Class Counsel by December 4, 1997.

### 3.2   *HUFF* LATE PAY CLASS:

Each sworn employee who had his or her consent to join the *Huff* action filed with the Court and who had FLSA overtime that was late paid at any time between two years prior to the date his or her consent to join was filed and the end of LAPD Deployment Period 12 of 1999 is a member of the *Huff* Late Pay Class.  Each member of this class, which numbers in excess of 200 members, has elected to be bound by the decisions of the Court in this matter.

//

Ex A η-4η
9

42996.1

1         **3.3**    *HUFF* LATE PAY SETTLEMENT CLASS:

2       All persons who have had, or will have, their consents to join filed with this Court after

3 December 1, 1999 and before March 16, 2000 and who have had their FLSA overtime paid late

4 are members of the Huff Late Pay Settlement Class. The members of this class may potentially

5 exceed 3,000 individuals. Each member of this class has been or will be informed of the pending

6 settlement prior to electing to be bound by the decisions of the Court and settlement in this

7 matter.

8         **3.4**    **GLOBAL CTO LITIGATION CLASS**:

9       Each sworn employee who had his or her consent to join the *Kimpel* or *Huff* consolidated

10 actions filed with the Court before December 1, 1999 is a member of the Global CTO Litigation

11 Class. Each member of this class has brought claims through Class Counsel of violations of 29

12 U.S.C. § 207(o) regarding compensatory time off (hereinafter "CTO"). Each member of this

13 class, which numbers in excess of 6,000 members, has elected to be bound by the decisions of

14 the Court in this matter.

15         **3.5**    *HUFF* CTO SETTLEMENT CLASS:

16       Each person who was a sworn employee at any time within the two years prior to filing a

17 consent to join the *Huff* case and who filed a consent to join the *Huff* action after December 1,

18 1999, but on or before March 16, 2000, is a member of the *Huff* CTO Settlement Class. The

19 members of this class may potentially exceed 3,000 individuals. Each member of this class has

20 been or will be informed of the pending settlement and has elected to be bound by the decisions

21 of the Court and settlement in this matter.

22            **3.5.1**   *HUFF* OPT-INS:

23       Plaintiffs, Class Members and the City agree that the last day to opt-in to the *Huff* Late

24 Pay Settlement Class and *Huff* CTO Settlement Class shall be March 16, 2000. The City and

25 counsel for both parties agree that best efforts have been and will be made to join all eligible

26 sworn employees into the *Huff* Settlement Classes up to and including March 16, 2000. Potential

27 eligible Class Members include all sworn employees who have not already joined the *Kimpel* or

28 *Huff* litigation.

Ex. A 8-47
10

4.   **CLASS STATUS**:

    **4.1**   **STIPULATION OF FACT**:

The *Kimpel* and *Huff* actions are representative class actions under section 216(b) of the FLSA.  Each Class Member in *Kimpel* or *Huff* who was not named in the complaint filed a consent to join the action. The Court has found that each of the classes herein have common questions of law and fact which predominate.   These five classes in *Huff* and *Kimpel* are defined as the *Kimpel* Late Pay Class, *Huff* Late Pay Class, *Huff* Late Pay Settlement Class, Global CTO Litigation Class and *Huff* CTO Settlement Class as set forth in 3.1, 3.2, 3.3, 3.4 and 3.5 above.

    **4.2**   **CLASS REPRESENTATIVES**:

The Court has found that the claims of the named plaintiffs set forth in the Joint Application for Class Certification are representative and typical of the claims or defenses of the members of the various classes that exist in *Kimpel* and *Huff* and thereby made such individuals Class Representatives.

    **4.3**   **CLASS COUNSEL**:

Pursuant to Court order and the agreement of the Class Representatives, Gregory G. Petersen, Esq., has been appointed by the Court to be Class Counsel for the five classes in the *Kimpel* and *Huff* cases.

5.   **PURPOSE OF AGREEMENT**:

The purpose of this Agreement is to resolve and settle all outstanding claims, issues and disputes in the *Kimpel* and *Huff* actions brought by Plaintiffs and/or Class Members against the City for alleged violations of the FLSA as more particularly set forth in the plaintiffs' pleadings filed in those actions.  The claims of Plaintiffs and Class Members which are being compromised are their allegations that the City violated the provisions of the FLSA regarding timely payment of overtime, as set forth in the Orders of the Court regarding late payment; that the City violated the unduly disruptive standard for use of FLSA CTO as set forth in Plaintiffs' brief filed November 17, 1998; that the City allowed Plaintiffs and Class Members to accrue FLSA CTO without a valid 29 U.S.C. § 207(o)(2) agreement in violation of the FLSA; that the City did not intend to allow sworn employees to utilize CTO accrued during Deployment Period 5 of 1992:

EX. A 9-41
11

1   that the City failed to comply with the record keeping provisions of the FLSA; and that the City

2   failed to properly adopt and apply the partial exemption for law enforcement personnel set forth

3   at 29 U.S.C. § 207(k). These claims were denied by the City. The parties wish to finally settle

4   and resolve all disputes and controversies regarding the above-mentioned claims in order to make

5   their peace and to avoid the uncertainties of further litigation and the expense incident thereto.

6       6.    WAIVER OF CALIFORNIA CIVIL CODE SECTION 1542:

7       The parties understand that this Agreement extends to all grievances, disputes or claims

8   of every nature and kind, known or unknown, suspected or unsuspected, arising from the claims

9   of Plaintiffs and Class Members in the *Kimpel* and *Huff* actions, as described in paragraph 5 of

10  this Agreement. The parties understand that this release does not address claims relating to any

11  conduct or activity which occurs after the date of the Court's entry of judgment which, pursuant

12  to paragraph 13.2, the parties expect will occur on March 31, 2000. However, the parties agree

13  that any violation of the provisions of the modified MOU that are not issues raised by the *Kimpel*

14  and *Huff* actions, occurring between the execution of this Agreement and the entry of stipulated

15  judgment, are not waived by this release. The parties further acknowledge that any and all rights

16  granted them under section 1542 of the California Civil Code are hereby expressly waived.

17  Section 1542 of the California Civil Code reads as follows:

18      SECTION 1542. CERTAIN CLAIMS AFFECTED BY GENERAL

19      RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS

20      WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST

21      IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE,

22      WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED

23      HIS SETTLEMENT WITH THE DEBTOR.

24      6.1   RELEASE:

25      Plaintiffs and Class Members, and all of their respective attorneys, agents and assignees

26  do hereby fully and forever release and discharge each other, Bernard Parks, Willie Williams, the

27  City and its past or present governing bodies, boards, officers, directors, attorneys, agents,

28  including Hemming-Morse, Inc. and KPMG, and employees, from any and all causes of action,

EX. A 10-49
12

2-16-00 Settlement Agreement

42996.1

1  actions, judgments. liens, indebtedness. damages, losses, claims, liabilities, grievances and

2  demands arising from Plaintiffs and Class Members' claims in the *Kimpel* and *Huff* actions

3  regarding the City's alleged violations of the FLSA as described in paragraph 5 of this

4  Agreement.

5       The City hereby fully and forever releases and discharges Plaintiffs and Class Members

6  and all of their respective attorneys, agents and assignees from any and all causes of action,

7  actions, judgments. liens, indebtedness. damages. losses, claims, liabilities, grievances and

8  demands arising from Plaintiffs and Class Members' claims in the *Kimpel* and *Huff* actions

9  regarding the City's alleged violations of the FLSA as described in paragraph 5 of this

10  Agreement.

11       **6.2    RELEASE UPON ACCEPTANCE OF SETTLEMENT FUNDS:**

12       Each Plaintiff and Class Member who receives a disbursement of funds pursuant to

13  paragraphs 7.1. 7.2. 7.3, or 7.4 shall be required to execute a document which substantially states

14  that:

15       "My acceptance of this money is my express approval of and agreement to the

16       terms of the Settlement Agreement in the consolidated actions of *Kimpel v.*

17       *Williams* and *Huff v. Parks* and the procedure by which the Settlement was

18       implemented by the parties and the Court.  I have received the Settlement

19       Agreement and acknowledge that I have had an opportunity to review the terms of

20       the Settlement Agreement and I fully and unreservedly agree to those terms."

21       **7.    PAYMENT AND PAYMENT SCHEDULES**

22       **7.1    *KIMPEL* LATE PAY CLASS:**

23       On or before April 3, 2000, the City shall deposit twenty-six million four hundred

24  thousand dollars ($26,400,000) in favor of the *Kimpel* Late Pay Plaintiffs and Class Members

25  into an interest bearing trust account designated by Class Counsel for the settlement of (1) all

26  such late pay claims and (2) all attorneys' fees and costs attributable to the claims of all *Kimpel*

27  Late Pay Plaintiffs and Class Members and Global CTO Litigation Class Members.

28       The twenty-six million four hundred thousand dollars ($26,400,000) shall be divided in

EX. A  11-41

13

1  accordance with the Disbursement Order filed with the Court under seal. The City will not

2  withhold any federal, state or local taxes from these amounts as the parties agree these payments

3  are not wages.

4      Class Counsel shall be responsible for obtaining the trust account and for disbursing the

5  amounts deposited into the trust account. The Court approved and determined the sum of money

6  and the propriety of the proposed distribution of funds to the *Kimpel* Late Pay Class Members for

7  their damages claims separate from, and prior to, the Court's determination of the attorneys' fees

8  award. Attorneys' fees are awarded to Class Counsel, in accordance with the confidential

9  Retainer Agreement between the LAPPL and Class Counsel, as modified for this settlement,

10  which shall remain confidential as set forth in California Business and Professions Code section

11  6149. The Court acknowledges that the LAPPL and Class Counsel agreed to a substantial

12  discount in fees for the purpose of achieving settlement of this case. A separate judgment may

13  be entered for this class under Federal Rule of Civil Procedure, Rule 54.

14      **7.2   *HUFF* LATE PAY CLASS:**

15      The City agrees to pay the *Huff* Late Pay Plaintiffs and Class Members a separate sum.

16  This separate sum for the *Huff* Late Pay Plaintiffs and Class Members shall be in addition to the

17  lump sum set forth in paragraph 7.1. The amount due all *Huff* Late Pay Class Members shall be

18  sixty one (61%) percent of his or her potential liquidated damages as shown by the procedure set

19  forth below.

20      The City agrees, for the purposes and in furtherance of settlement for the *Huff* Late Pay

21  classes only, not to assert any and all good faith defenses it may have raised for these specific late

22  pay claims. Liquidated damages for the *Huff* Late Pay Class Members who filed with the Court

23  consents to join the *Huff* litigation before December 1, 1999, shall be calculated for the period

24  from two years prior to the date that the *Huff* Late Pay Class member filed his or her consent to

25  join until the end of LAPD Deployment Period 12 of 1999.

26      In furtherance of settlement only, the parties agree that any *Huff* Late Pay Settlement

27  Class Member who files a consent to join after December 1, 1999 shall have his or her potential

28  liquidated damages calculated from the beginning of LAPD Deployment Period 1 in 1998 to the

Ex. A 12-41
14

1  end of LAPD Deployment Period 12 in 1999. If a person is a Class Member in both *Kimpel* and

2  *Huff* he or she shall only be able to recover settlement amounts in *Kimpel*.

3      The City shall cooperate in providing payroll data for all potential *Huff* Late Pay Class

4  Members to Class Counsel. Class Counsel shall advise counsel for the City of the identity of all

5  *Huff* Late Pay Class Members and identify any disputes regarding the City's calculation of

6  potential liquidated damages as soon as possible. If counsel do not agree on the total liquidated

7  damages for a Class Member, counsel shall submit a joint written statement detailing their

8  position with regards to that Class Member. The Special Master shall rule on the amount of

9  liquidated damages for that Class Member. Counsel shall then prepare a written itemization for

10  each Class Member totaling 61% of the liquidated damages for all Class Members by March 20,

11  2000.

12      A separate Stipulated Judgment pursuant to Rule 54, for the *Huff* Late Pay Class

13  Members, detailing the individualized late pay recovery, may be submitted for the purposes of

14  allowing the City to obtain funds from the issuance of a judgment obligation bond as

15  expeditiously as possible under the applicable laws. Interest on the liquidated damages shall be

16  calculated from April 17, 2000 to the date of actual disbursement of funds by the City to

17  Plaintiffs' counsel for Class Members who filed a consent to join *Huff* on or before March 16,

18  2000. The amount of agreed settlement payments for all *Huff* Late Pay Class Members shall be

19  paid in one lump sum in the same manner as the *Kimpel* late pay disbursement. Class Counsel

20  shall be responsible for disbursing the funds in the trust account amongst the *Huff* Late Pay Class

21  Members in accordance with the Stipulated Judgment for *Huff*.

22      7.3   **GLOBAL CTO LITIGATION CLASS**:

23      As set forth hereinafter, the City shall, upon its receipt of the proceeds obtained from the

24  issuance of judgment obligation bonds for this Agreement, deposit a lump sum amount of four

25  million dollars ($4,000,000.00) of the ten million dollars ($10,000,000.00) set forth in paragraph

26  8 into an interest bearing trust account designated by Class Counsel in settlement for the CTO

27  claims brought by the Global CTO Litigation Class Members. The City will not withhold any

28  federal, state or local taxes from these amounts, as the parties and the Court have determined that

Ex. A  13-41
15

1  these amounts are liquidated damages, which are taxable income, but not wages for hours
2  worked. The City shall pay Global CTO Litigation Class Members interest on the lump sum
3  amount commencing on April 3, 2000 and ending upon the disbursement of the funds. Class
4  Counsel shall be responsible for disbursing that amount on a pro-rata basis amongst the Global
5  CTO Litigation Class Members. A separate judgment may be entered for this class under Federal
6  Rule of Civil Procedure, Rule 54.

7        7.4   *HUFF* CTO SETTLEMENT CLASS:

8        Separately, the City shall provide four hundred dollars ($400.00) to every *Huff* CTO
9  Settlement Class Member for all of the FLSA claims brought in this case by depositing a lump
10  sum payment into an interest bearing trust account designated by Class Counsel at the same time
11  set forth in paragraph 7.3. herein. Class Counsel shall be solely responsible for distributing this
12  lump sum amount amongst the *Huff* CTO Settlement Class. These funds are not part of the ten
13  million ($10,000,000) or the twenty-six million four hundred thousand dollars ($26,400,000) or
14  any other sums set aside heretofore. A separate judgment may be entered for this class under
15  Federal Rule of Civil Procedure, Rule 54.

16    8.   CTO CASH-OUT:

17        The parties understand that the City will utilize ten million dollars ($10,000,000.00) for
18  payment of FLSA CTO related damage claims brought in the *Kimpel* and *Huff* cases. The above-
19  mentioned funds will be used to pay the liquidated damages amount referenced in paragraph 7.3
20  above, cash out all FLSA CTO, and cash out all non-FLSA new bank hours in excess of ninety-
21  six (96). The parties recognize that the City has old and new time banks and that many of the
22  hours in each bank are non-FLSA CTO.

23        8.1   CASH OUT OF FLSA CTO AND NEW BANK HOURS OVER 96:

24        It is the City's intention that, after disbursing the four million dollars in 7.3 above, the
25  City will proceed to cash out, as allowed by law in 29 C.F.R. § 553.27(a) and the modified
26  MOU, all FLSA CTO in the old and new time banks and all non-FLSA CTO hours in excess of
27  ninety-six (96) in the new time banks of each sworn employee. The parties understand that the
28  City intends to first cash out all FLSA CTO in the old time banks, then reduce the new time

Ex. A  14-47

2-16-00 Settlement Agreement

1  banks to 96 hours and then cash out all FLSA CTO in the new time banks. The City shall be

2  solely responsible for the set aside and cash out of FLSA CTO and the reduction of a sworn

3  employee's old and new time banks. The City shall treat the cash out of CTO as wages for tax

4  withholding purposes.

5  ### 8.1.1   OLD TIME BANK FLSA HOURS:

6       Many of the hours in the old and new time banks are non-FLSA hours. The parties have

7  engaged in extensive efforts to ascertain the exact amount of FLSA hours in each Plaintiff and

8  Class Member's CTO banks. However, the parties acknowledge that these sums are difficult to

9  determine and can and do change. As a result of these efforts. the parties have agreed and the

10 Court has determined that two and one-half percent (2.5%) of the old time bank hours of all

11 Class Members who, on the freeze date, have a balance in excess of nineteen (19) hours are

12 FLSA hours. The City shall be solely responsible for the set aside of the old time bank hours.

13 ### 8.1.2   NEW TIME BANK FLSA HOURS:

14      The remaining percentage of FLSA CTO in the new time bank shall be determined by

15 subtracting the total dollar value of the cash outs of old time bank FLSA hours and all hours

16 above 96 in the new time bank from the sum of six million dollars ($6,000,000.00). This amount

17 shall be divided by the total dollar value of the new time bank to arrive at the percentage of

18 FLSA overtime in the new time bank for each sworn employee who, on the freeze date, has a

19 balance in excess of nineteen (19) hours.

20 ### 8.2   PROCEDURE FOR CASH OUT OF FLSA HOURS AND HOURS

21 ### OVER 96:

22      The "freeze date" for the purpose of cashing out the FLSA hours in the CTO time banks

23 and all hours over 96 in the new time bank shall be March 25, 2000. The City shall cash out all

24 FLSA hours in the old time bank of each sworn employee by placing two and one half percent

25 (2.5%) of the hours in the old time bank for each sworn employee into a separate ledger account

26 on the freeze date. The City shall then cash out all hours in the new time bank in excess of 96 by

27 placing those hours into the separate ledger account on the freeze date. The City shall then cash

28 out all FLSA hours in the new time bank according to the percentage determined by the method

Ex. A  15-41
19

2-16-00 Settlement Agreement

32996 1

1  set forth in paragraph 8.1.2 and place those hours into the separate ledger account on the freeze

2  date. The CTO hours in the ledger account shall be frozen until the City obtains the funds from

3  its issuance of judgment obligation bonds for the *Kimpel* and *Huff* consolidated actions.  The City

4  shall pay interest on the ledger account commencing on the freeze date and ending upon the

5  disbursement of the funds. The parties agree that no Class Member will have any FLSA CTO in

6  his or her old or new time CTO banks as of 12:01 a.m. on the day following the freeze date as a

7  result of this Agreement, as allowed by 29 C.F.R. § 553.27(a).  For the purposes of this

8  paragraph, any requests to use CTO in conjunction with a vacation which was approved on or

9  before thirty (30) days prior (February 24, 2000) to the freeze date (March 25, 2000) will not be

10  cashed out pursuant to this paragraph, but rather, will be used by the employee. If the employee

11  fails to use it, the CTO will be cashed out pursuant to this paragraph.

12  **9.   AGREEMENT ON TIMELY PAYMENT OF OVERTIME:**

13  **9.1   REMEDIAL MEASURES:**

14  The parties agree, and the Court concurs, that the City has taken remedial measures on or

15  after Deployment Period 12, 1997 to modify its method of compensating overtime including, but

16  not limited to, decentralizing the entry of overtime data.  Those efforts by the City are sufficient

17  to establish a good faith corrective action affirmative defense as set forth in 29 U.S.C. § 260

18  which could minimize or eliminate liquidated damages for the late pay claims of Class Members

19  after Deployment Period 12, 1997.

20  The parties agree, and the Court concurs that a two (2) year statute of limitations is

21  applicable in the *Kimpel* and *Huff* actions.  The Court does not find sufficient evidence to

22  establish a finding of wilfulness and hence a three (3) year statute of limitations does not apply to

23  the *Kimpel* and *Huff* actions.

24  **9.2   OVERTIME WILL BE PAID IN ACCORDANCE WITH THE**

25  **FLSA:**

26  The City agrees to pay sworn employees for all overtime worked in a particular

27  deployment period in accordance with the FLSA.

28  ///

Ex.A 16-47
18

42996 1

**9.3**   CORRECTIVE ACTION TO ENSURE TIMELY PAYMENT OF OVERTIME:

The parties further agree that up to six percent (6%) of the overtime transactions submitted in a given deployment period by sworn employees may be compensated after the first payday following the end of that deployment period, provided that the overtime is compensated by the following payday, unless the delay in compensation is a result of the overtime report not being submitted in a timely manner by the employee working the overtime. The parties agree that the City has taken corrective actions on or after Deployment Period 12 of 1997 to ensure timely payment of overtime. The City's corrective action shall constitute a good faith defense, as that term is defined pursuant to 29 U.S.C. § 260, to claims for late payment of overtime provided that the amount of late payment for sworn employees is equal to or less than six percent (6%) of the total transactions submitted by sworn employees for each deployment period for calendar years 2000 and 2001. The percentage that may be compensated later than required by the FLSA as interpreted by 29 C.F.R. § 778.106 shall be reduced to five percent (5%) in calendar year 2002, four percent (4%) in calendar year 2003 and three percent (3%) in calendar year 2004. The City shall have a good faith defense under the FLSA and not be subject to liquidated damages for late payment of overtime which is equal to or less than the percentages specified above, except as noted below in paragraph 9.3.2. The City shall be precluded from asserting a defense pursuant to 29 U.S.C. § 260 for taking corrective action regarding its compliance with 29 C.F.R. § 778.106 if the amount of late overtime payments per deployment period for sworn employees exceeds the percentages specified above.

**9.3.1**   REPORTS OF TIMELY PAYMENT BY LAPD DEPLOYMENT PERIOD:

The LAPD shall provide business payroll records to the Class Counsel on a deployment period basis commencing with the first deployment period which ends after the execution of this Agreement. The records provided shall contain and provide the necessary information to determine the timely payment to sworn employees of overtime per deployment period for each division of the LAPD with more than 150 sworn overtime transactions in the deployment period.

Ex.A  19-49
19

42996.1                                                    2-16-00 Settlement Agreement

### 9.3.2   INDIVIDUAL LATE PAYMENTS OF OVERTIME:

If an individual sworn employee or Class Counsel gives written notice prior to December 31, 2004 to the Department that his or her overtime is being paid late, and actually was paid late, and the overtime for that individual is paid late for each of the next two LAPD deployment periods, the City shall not be able to rely upon the FLSA's good faith defense set forth at 29 U.S.C. § 260 for taking corrective action as it relates to those overtime transactions for that individual.

### 9.4   LATE PAYMENT RESULTING FROM DELAYED SUBMITTAL OF OVERTIME REPORTS:

Plaintiffs and Class Members agree that if the correct amount of overtime compensation cannot be determined by the first payday following the deployment period in which the overtime was worked because the Plaintiff and/or Class Member did not submit the necessary and correct documentation showing the hours worked, then so long as such payment is made no later than one payday following the pay period in which the necessary and correct documentation was received, such payment(s) shall not be considered to have been delayed longer than is reasonably necessary pursuant to the FLSA as interpreted by the Department of Labor at 29 C.F.R. § 778.106.

### 10.   COMPENSATORY TIME OFF USE AND ACCRUAL:

#### 10.1   NO FORCED USE OF CTO:

The City shall not force or require a sworn employee to use any CTO at any time after the execution date and any such rule, regulation or policy to the contrary is rescinded.

### 11.   CASH COMPENSATION IF NEW CTO BANK IS OVER 96 HOURS:

Beginning on the freeze date set forth in paragraph 8.2, the City intends to provide monetary compensation for all overtime hours accumulated over ninety-six (96) hours of CTO in the new bank.

### 12.   THE CITY'S PROCEDURE FOR COMPENSATION OF ALL FLSA CTO:

It is understood that the City does not desire to compensate any FLSA overtime hours worked by sworn employees in the form of CTO. As currently allowed by the MOU, the City

EX. A 18-41

1  will use a method referred to as the 19-Hour Rule to ensure that all sworn employees receive only

2  cash compensation and no CTO for any FLSA overtime hours worked.

3       The 19-Hour Rule is a payroll procedure which compensates all overtime for sworn

4  employees in cash once nineteen (19) hours of overtime have been entered into the payroll

5  system in a deployment period, provided that there is one LAPD day off in lieu of a holiday in

6  that deployment period. If there are two days off in lieu of a holiday, the system will compensate

7  all overtime in cash after twenty-seven (27) overtime hours have been entered; and if there are no

8  days off in lieu of a holiday the system will compensate all overtime in cash after eleven (11)

9  overtime hours have been entered.

10       The parties agree that the purpose of this Rule is to ensure that no FLSA CTO is accrued

11  by sworn employees. There will be no FLSA CTO paid to LAPD officers henceforth. The parties

12  further understand that if CTO is credited to a sworn member of the LAPD in excess of the 19-

13  Hour Rule the City shall cash out those CTO hours upon the discovery of this fact.

14      **13.**   **SETTLEMENT PROCEDURE**:

15       Upon initial approval of this Agreement by the Honorable Judge George H. King and

16  approval by the City Council, Class Counsel shall commence notification to *Kimpel* Late Pay,

17  *Huff* Late Pay, and Global CTO Litigation Classes of this Agreement by February 23, 2000 in a

18  manner reasonably calculated to give actual notice to all applicable Class Members of *Kimpel*

19  and *Huff*. The Notice shall be submitted by the parties to the Court and approved by the Court

20  prior to its transmittal to Plaintiffs/Class Members. The Notice shall contain this Settlement

21  Agreement, a letter from Class Counsel and shall, at a minimum, advise in plain language:

22         a)  A Class Member must file any written objections to the Proposed

23            Settlement with the Court no later than March 17, 2000 and serve copies

24            of such objections upon counsel for the Class and the City;

25         b)  The Court shall conduct a hearing to consider the objections of any Class

26            Member to the Proposed Settlement on March 23, 2000 at 11:00 a.m. in

27            Courtroom 660 of the United States District Court;

28         c)  The Court shall determine whether the Proposed Settlement is fair,

Ex. A 19-41

21

129961

2-16-00 Settlement Agreement

1  reasonable and adequate after hearing any objections to the Proposed

2  Settlement;

3  d)  If the Court determines the Proposed Settlement is fair, reasonable and

4  adequate the Court shall enter a Stipulated Judgment in accordance with

5  the terms of this Agreement;

6  e)  The lack of a response from any particular Class Member during the

7  period for written objections shall be deemed as an acceptance of the terms

8  of the Settlement Agreement;

9  f)  The amount of liquidated damages which the Class Member will receive

10  pursuant to this Settlement Agreement, if the Agreement is approved by

11  the Court;

12  g)  The procedure for a Class Member who chooses not to participate in the

13  Settlement to dismiss his or her claims without prejudice; and

14  h)  Instructions regarding the method of acceptance of the Settlement

15  Agreement.

16  Class Counsel and City's counsel shall make best efforts to effectuate and implement the

17  Settlement Agreement by notifying Class Members of *Kimpel* and *Huff* of the terms of the

18  Settlement Agreement and the events which will occur as the parties perform their obligations

19  under the Agreement through postings, departmental mail, U.S. mail, e-mail, videotape and all

20  reasonable means necessary.

21  **13.1   HEARING ON PROPOSED SETTLEMENT:**

22  The Court shall conduct a hearing to determine if the Proposed Settlement is fair,

23  reasonable and adequate on March 23, 2000 at 11:00 a.m. Any objections by any person to the

24  Proposed Settlement must be filed with the Court and served on counsel for the Plaintiffs and the

25  City no later than March 17, 2000. Class Counsel or the City's counsel may file a written

26  response to the objections with the Court no later than March 21, 2000. If the Court determines

27  that the Proposed Settlement is fair, reasonable and adequate, the Court shall issue an order to

28  that effect.

Ex. A 20-47
22

2-16-00 Settlement Agreement

42996.1

## 13.2   DISMISSAL OF CLAIMS BY CLASS MEMBERS:

Any Class Member who decides not to participate in the Settlement Agreement must file with the Court and serve on all counsel a dismissal of his or her claims without prejudice no later than March 29, 2000.  The Court, if it issues an order that the Settlement is fair, reasonable and adequate, shall enter a Stipulated Judgment in accordance with the terms of this Agreement on March 31, 2000, except as noted below. Either party shall have until March 30, 2000 to apply to the Court for permission to rescind its approval of the Agreement due to objections and/or dismissals by the Class Members.  If such an application is made, the Court shall not enter a Stipulated Judgment until it rules on the application.

### 13.2.1 REDUCTION OF SETTLEMENT AMOUNTS FOR CLASS MEMBERS WHO DISMISS THEIR CLAIMS:

The settlement amounts set forth in paragraphs 7.1, 7.2 and 7.3 of this Agreement shall be reduced in accordance with the confidential Disbursement Order for each Plaintiff and/or Class Member who affirmatively elects not to be bound by the Settlement and dismisses their claims without prejudice according to the procedure set forth in paragraph 13(g).  Specifically, the amount set forth in paragraph 7.1 will be reduced by the amount set forth in the Court's Disbursement Order for each *Kimpel* Late Pay Class Member who dismisses his or her claims without prejudice.  The amount set forth for the *Huff* Late Pay Class shall be reduced by the amount in the Court's Disbursement Order for each *Huff* Late Pay Class Member who dismisses his or her claims without prejudice.  The amount set forth in paragraph 7.3 shall be reduced by the amount in the Court's disbursement list for each Global CTO Litigation Class Member who dismisses his or her claims without prejudice.  The Court shall enter an order returning to the City the sum of money awarded to each person who elects not to be bound by the Settlement Agreement awarded by the confidential Disbursement Order.

### 13.3   CLAIM PERIOD:

Any and all funds not claimed or acknowledged by a Class Member within one year of disbursement, together with all interest thereon, shall revert back to the City upon thirty (30) days written notice to each Plaintiff and/or Class Member with unclaimed funds mailed, postage

EX.A 21-47
23

42996.1                                                              2-16-00 Settlement Agreement

1 prepaid, to his or her last known address by both Class Counsel and the City's counsel. The

2 amount which shall revert back to the City for the *Kimpel* Late Pay and *Huff* Late Pay Class

3 Members shall be the amount set forth in the Court's Disbursement Order for each *Kimpel* Late

4 Pay Class Member and *Huff* Late Pay Class Member plus accrued interest on that amount. The

5 amount which shall revert back to the City for the Global CTO Litigation Class Member shall be

6 the amount set forth in the Court's Disbursement Order for the Global CTO Litigation Class

7 Members plus accrued interest on that amount. The amount which shall revert back to the City

8 for the *Huff* CTO Settlement Class Members shall be four hundred dollars ($400) for each Class

9 Member who does not claim funds pursuant to this Agreement plus accrued interest on that

10 amount. A person may be a member of one late pay class, either *Kimpel* or *Huff,* and also one

11 CTO class, either Global CTO Litigation Class or *Huff* CTO Settlement Class, and therefore

12 funds may revert to the City pursuant to this paragraph from both a late pay class and a CTO

13 class for an individual.

14     **14.**   **ANTI-RETALIATION:**

15     The FLSA prohibits retaliation by the City against Plaintiffs and Class Members, as set

16 forth more fully at 29 U.S.C. § 215(a)(3). No retaliatory action shall be taken against any

17 Plaintiff or Class Member by the City for his or her participation in the litigation and/or

18 settlement in the *Kimpel* or *Huff* cases.

19     **15.**   **DISCLOSURES AND REPRESENTATIONS:**

20        **15.1**   **CONSULTATION WITH COUNSEL:**

21     Plaintiffs and Class Members have been informed of the opinion of Class Counsel, and

22 have had sufficient time to consult with independent counsel with respect to the advisability of

23 accepting the terms of this Agreement, and with respect to the releases, waivers, and all matters

24 contained herein. Class Members, in accepting the settlement, agree to the terms herein and hold

25 harmless all attorneys, agents, servants or others acting relevant thereto. The City has had

26 sufficient time to consult with counsel with respect to the advisability of executing this

27 Agreement, and with respect to the releases, waivers, and all matters contained herein. The City

28 and Plaintiffs acknowledge that they have executed this Agreement without fraud, duress, or

Ex. A 22-41
24

1  undue influence.

2     **15.2   NO RELIANCE ON PRIOR REPRESENTATIONS:**

3        Statements made in the past have been modified by changing circumstances.  Plaintiffs,

4  Class Members and the City acknowledge that the circumstances in this settlement are unique.

5  Plaintiffs and Class Members, and any other officer, agent, employee, representative, or attorney,

6  have not made any statements, representations, or promises to the City regarding any facts which

7  may be relied upon in executing this Agreement, except as expressly stated in this Agreement.

8  Neither the City, nor any other officer, agent, employee, representative, or attorney, has made any

9  statement, representation, or promise to the Plaintiffs and Class Members regarding any facts

10 which may be relied upon in executing this Agreement, except as expressly stated in this

11 Agreement.

12    **15.3   VOLUNTARY AND KNOWING WAIVER OF RIGHT:**

13       Each party acknowledges that he, she or it has carefully read this Agreement and has been

14 advised fully by legal counsel of the legal and binding effect of its terms.  Each party

15 acknowledges that the only promises made to induce him, her or it to sign this Agreement are

16 those stated herein.  Having been fully advised and informed, each party voluntarily enters into

17 this Agreement and the waiver of rights covered by this Agreement.  Each Plaintiff and Class

18 Member realizes that he or she has a right under the FLSA to minimum wages and unpaid

19 overtime as set forth in the FLSA.  Each party agrees that he or she is entering into this

20 Settlement Agreement because of uncertainty over the outcome of the litigation and the potential

21 for Plaintiffs and Class Members to receive anywhere from no damages to full liquidated

22 damages and attorneys' fees should these actions proceed to a final judgment and is therefore not

23 waiving any entitlement to overtime that he or she possessed under the FLSA.

24       Each party understands, acknowledges, and agrees that this is a compromise settlement of

25 disputed claims, and that nothing herein shall be deemed or construed at any time or for any

26 purpose as an admission of the merits of any claim or defense.

27    **15.4   ASSIGNMENT OF RIGHTS BY CLASS MEMBERS:**

28       Except for such assignations, transfers, or grants which may have occurred upon

Ex. A  23-41
25

1   operation of law, the parties have not heretofore assigned, transferred, or granted, or purported to

2   assign, transfer, or grant, any of the claims, demands, causes of action, obligations, liens,

3   judgments, orders, damages, liabilities, losses, costs and expenses of any kind, in law or in

4   equity, whether known or unknown, that parties now hold, will ever hold, or have ever held

5   against the other related to this case, including, but not limited to: 1) any and all claims,

6   demands, or causes of action reflected in the lawsuit; 2) any and all claims, demands, or causes of

7   action arising out of or in any way connected with any transactions, occurrences, acts or

8   omissions set forth or alleged in the lawsuit; or 3) any and all claims, demands, or causes of

9   action arising out of or in any way connected with any transactions, occurrences, acts or

10  omissions occurring prior to the effective date of this Agreement.

11      16.   **MODIFICATION OF THE LAPPL MOU**:

12      The parties agree that this Agreement is contingent upon the LAPPL agreeing to modify

13  the current MOU in accordance with the terms of this Agreement.  Such modifications must be

14  made contemporaneous with the execution of this Agreement by the City and shall go into effect

15  at that time.  If the modifications to the current MOU are not made contemporaneous with the

16  City's execution of this Agreement, the City shall not execute this Agreement.  The parties agree

17  that this Agreement does not impose any restrictions on either party to the modified MOU with

18  respect to any future negotiations regarding the terms of the modified or successor MOUs.

19  Should stipulated judgment not be entered pursuant to this Agreement, the modifications to the

20  MOU will be nullified.

21      17.   **INTEREST PAYMENTS**

22      Any interest owed to Plaintiffs, Class Members, and/or Class Counsel shall be calculated

23  based upon the federal interest rate, determined by the procedure set forth at 28 U.S.C. § 1261(a),

24  in effect as of the first date on which the City is required to calculate interest.

25      18.   **REIMBURSEMENTS**:

26      The City agrees that an award of reasonable attorneys' fees and costs under 29 U.S.C. §

27  216(b) is appropriate in this case.  The parties further agree that the sums listed in paragraph 7

28  and its sub-sections of this Agreement constitute full compensation of the attorneys' fees and

Ex. A  24-47
26

42996.1                                    2-16-00 Settlement Agreement

1   costs to which prevailing parties are entitled by law.  Class Counsel shall transmit to the LAPPL

2   such funds, in an amount to be set forth by the separate agreement set forth at paragraph 7.1, to

3   repay Class Member contributions to the LAPPL fund in the *Kimpel* and *Huff* cases.  Upon such

4   payment all claims for attorneys' fees and costs shall be extinguished by all parties, Plaintiffs and

5   Class Members with Class Counsel.  Upon the conclusion of settlement negotiations as to

6   damages, the Court determined the appropriate award of attorneys' fees and costs.  Such fees and

7   costs are included within the funds set forth in paragraph 7 above and are separately stated in the

8   confidential Disbursement Order.

9   Two hundred and eighty four thousand dollars ($284,000) is the estimate determined by

10  the Court, separate and independent from the fees in *Kimpel*, to be a reasonable attorneys' fee for

11  the representation of the *Huff* plaintiffs and such funds shall be paid to Class Counsel on the

12  remaining settlement issues.  If such fees are not paid by April 3, 2000, the City shall pay interest

13  beginning on April 3, 2000 and continuing until the funds are paid to Class Counsel.

14      **19.   PAYROLL DEDUCTIONS**:

15  Plaintiffs and Class members shall withdraw their request to have funds deducted from

16  Plaintiffs and Class Members' paychecks for purposes of funding this litigation at such time as

17  no funds remain to be deposited into a trust account or paid to Class Counsel pursuant to the

18  provisions in paragraph 7, unless sooner requested by the Class counsel and/or the LAPPL,

19  whichever first occurs.

20      **20.   FLSA AGREEMENT**:

21  Nothing in this Agreement shall be construed to be, nor does it constitute, an Agreement

22  for allowing compensation of overtime with CTO pursuant to 29 U.S.C. § 207(o)(2) and no such

23  agreement exists or shall be implied from this Agreement.

24      **21.   JURISDICTION**:

25  This Agreement, upon execution by the parties and entry of a Stipulated Judgment by the

26  Court, shall have the effect of a binding judgment, the breach of which shall renew and retain

27  jurisdiction in the United States District Court.  In the event of breach, the Court shall have the

28  authority to enforce any and all of the terms and conditions contained herein for the period

EX.A  25-41
29

42996.1                                          2-16-00 Settlement Agreement

1  commencing with the final approval and Disbursement Order until a date five (5) years thence.  If

2  any action be instituted to enforce this Agreement, the Court shall have jurisdiction to award

3  attorneys' fees and costs to the prevailing party.

4      **22.**   **ENTIRE AGREEMENT IS INTEGRATED**:

5      The parties agree that the obligations contained in this Agreement are the sole and only

6  consideration for it, and that no representations or inducements have been made by any party, or

7  such party's employees, agents, or attorneys, except as specifically set forth in this Agreement.

8  There is no other Agreement, written or oral, express or implied, between the parties with respect

9  to the subject matter of this Agreement except as explicitly referred to herein.  This Agreement

10  supersedes any previous oral or written agreements or understandings between the parties

11  regarding any matter contained in the Agreement.

12      **23.**   **SUCCESSORS**:

13      This Agreement shall be binding upon Plaintiffs, Class Members and their heirs,

14  representatives, executors. administrators, successors and assigns, and shall inure to the benefit

15  of each and all of the heirs. representatives, executors, administrators, successors and assigns.

16  For purposes of this paragraph only, the term "representatives" does not include the LAPPL.

17      **24.**   **JOINT DRAFTING OF AGREEMENT**:

18      Class Counsel and the City have participated in the drafting of this Agreement with the

19  assistance of the Court.  Attorneys for all parties by their signature on this Agreement approve it

20  as to form, and accordingly, the normal rule of construction to the effect that any ambiguities are

21  to be resolved against the drafting parties will not be employed in any interpretation of this

22  Agreement.

23      **25.**   **STIPULATED JUDGMENT**:

24      Upon execution by the parties in the manner set forth above and the Court's

25  determination that the Proposed Settlement is fair, adequate and reasonable, this Agreement shall

26  be submitted to the Court for entry of a stipulated judgment.

27      **26.**   **WITHHOLDING OF TAXES FROM SETTLEMENT AMOUNTS**:

28      The parties agree and the Court so determines that the lump sum cash payments set forth

Ex. A 26-47
28

42996.1

1  in paragraphs 7.1, 7.2, 7.3, and 7.4 are liquidated damages and/or attorneys' fees and costs, not

2  wages. Since the amounts are not wages, the parties believe that such amounts are not subject to

3  federal and state tax withholding requirements, although they are taxable as gross income.

4  Plaintiffs and Class Members are encouraged to consult with a tax advisor or attorney to

5  independently determine any federal, state or local tax consequences of the settlement amounts

6  and no opinion on any tax matter is expressed herein. Plaintiffs and Class Members are solely

7  responsible for reporting amounts received as liquidated damages pursuant to this Agreement to

8  any applicable federal, state or local agency as required by law.

9  **27.  FORCE MAJEURE:**

10  If any act of God, riot, natural disaster, war, armed conflict, or other event of a similar

11  nature occurs which substantially impairs the ability of a party to perform the terms of this

12  Agreement, then either party may terminate the Agreement upon application and approval by the

13  Court.

14  **28.  SEVERABILITY:**

15  This Agreement shall be considered severable, such that if any provision or part of the

16  Agreement is ever held invalid under any law or ruling, that provision or part of the Agreement

17  shall remain in force and effect to the extent allowed by law, and all other provisions or parts

18  shall remain in full force and effect.

19  **29.  EXECUTION OF THIS AGREEMENT:**

20  **29.1  EXECUTION BY THE CITY:**

21  The Charter for the City provides that only the City Council has authority to enter into

22  this Agreement. Therefore, this Agreement may only be approved by the City by an action of the

23  City Council.

24  **29.2  EXECUTION BY THE PLAINTIFFS:**

25  The named Plaintiffs and Class Representatives in the *Kimpel* and *Huff* actions shall

26  execute this Agreement by their signatures. Each Plaintiff or Class Representative may execute

27  this Agreement in counterpart by signing a copy of the signature page for this Agreement. A

28  facsimile copy of a signature shall have the same force and effect as an original. Each of the

Ex. A 29-41

42996.1

signed signature pages shall be incorporated into this Agreement and have the same legal effect
as if the Plaintiff or Class Representative had signed the original copy of this Agreement.

DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

Ex. A 28-47
30

1   DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

2

3   DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

4

5   DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

6

7   DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

8

9   DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

10

11  DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

12

13  DATED: _____, 2000

_____
Class Representative In *Kimpel v. Williams*

14

15  DATED: _____, 2000

_____
MICHAEL C. HUFF
Class Representative In *Huff v. Parks*

16

17  CITY OF LOS ANGELES

18

19  DATED: __2/16__, 2000   By: _____
                                 JOHN FERRARO
20                               President, City Council City of Los Angeles

21

22  //

23  //

24  //

25  //

26  //

27  //

28  //

EX.A 29-47
31

2-16-00 Settlement Agreement

1  APPROVED AS TO FORM:

2                                        THE PETERSEN LAW FIRM

3

4  DATED: _____, 2000           By:_____
                                            GREGORY G. PETERSEN
5                                           Attorneys for Plaintiffs and Class Counsel

6

7                                        LIEBERT CASSIDY

8

9  DATED: __2|17__, 2000                By:_____
                                            PETER J. BROWN
10                                          Attorneys for Defendants

11                                       CITY OF LOS ANGELES

12

13  DATED: __2/16__, 2000               By:_____
                                            JAMES K. HAHN
14                                          City Attorney, City of Los Angeles

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                       Ex. A 30-47
                                             37

1   APPROVED AS TO FORM:

2                                           THE PETERSEN LAW FIRM

3

4   DATED: ___2\16___, 2000          By: _____

5                                           GREGORY G. PETERSEN
                                            Attorneys for Plaintiffs and Class Counsel

6

7                                           LIEBERT CASSIDY

8

9   DATED: _____, 2000          By:_____

10                                          PETER J. BROWN
                                            Attorneys for Defendants

11

12                                          CITY OF LOS ANGELES

13  DATED: _____, 2000          By:_____

14                                          JAMES K. HAHN
                                            City Attorney, City of Los Angeles

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          Ex.A 31-49
                                            33

1  execute this Agreement by their signatures.  Each Plaintiff or Class Representative may execute

2  this Agreement in counterpart by signing a copy of the signature page for this Agreement.  A

3  facsimile copy of a signature shall have the same force and effect as an original.  Each of the

4  signed signature pages shall be incorporated into this Agreement and have the same legal effect

5  as if the Plaintiff or Class Representative had signed the original copy of this Agreement.

6

7  DATED: _2/18/00_, 2000   _____
        Class Representative In *Kimpel v. Williams*

8

9  DATED: _____, 2000   _____
        Class Representative In *Kimpel v. Williams*

10

11  DATED: _____, 2000   _____
        Class Representative In *Kimpel v. Williams*

12

13  DATED: _____, :000   _____
        Class Representative In *Kimpel v. Williams*

14

15  DATED: _____, 2000   _____
        Class Representative In *Kimpel v. Williams*

16

17  DATED: _____, 2000   _____
        Class Representative In *Kimpel v. Williams*

18

19  DATED: _____, 2000   _____
        Class Representative In *Kimpel v. Williams*

20

21  DATED: _____, 2000   _____
        Class Representative In *Kimpel v. Williams*

22

23  DATED: _____, 2000   _____
        Class Representative In *Kimpel v. Williams*

24

25  DATED: _____, 2000   _____
        Class Representative In *Kimpel v. Williams*

26

27  DATED: _____, 2000   _____
        Class Representative In *Kimpel v. Williams*

28

EX.A 32-47

2-16-00 Settlement Agreement

1

2  DATED: 2-18 _____, 2000    _____
                                Class Representative In *Kimpel v. Williams*

3

4  DATED: _____, 2000
                                _____
5  DATED: _____, 2000      Class Representative In *Kimpel v. Williams*
                                _____
                                Class Representative In *Kimpel v. Williams*
6

7  DATED: _____, 2000
                                _____
8                               Class Representative In *Kimpel v. Williams*

9  DATED: _____, 2000
                                _____
10                              Class Representative In *Kimpel v. Williams*

11 DATED: _____, 2000
                                _____
12                              Class Representative In *Kimpel v. Williams*

13 DATED: _____, 2000
                                _____
14                              Class Representative In *Kimpel v. Williams*

15 DATED: _____, 2000
                                _____
16                              Class Representative In *Kimpel v. Williams*

17 DATED: _____, 2000
                                _____
18                              Class Representative In *Kimpel v. Williams*

19 DATED: _____, 2000
                                _____
20                              MICHAEL C. HUFF
                                Class Representative In *Huff v. Parks*
21
                                CITY OF LOS ANGELES
22

23 DATED: _____, 2000      By:_____
                                    JOHN FERRARO
24                                  President, City Council City of Los Angeles

25

26 //

27 //

28

0042996.01

1  signed signature pages shall be incorporated into this Agreement and have the same legal effect

2  as if the Plaintiff or Class Representative had signed the original copy of this Agreement.

3

4  DATED: Feb. 17 _____, 2000       *Martin J. Feinmark*
                                        Class Representative In *Kimpel v. Williams*
5

6  DATED: _____, 2000
                                        _____
7                                       Class Representative In *Kimpel v. Williams*

8  DATED: _____, 2000
                                        _____
9                                       Class Representative In *Kimpel v. Williams*

10 DATED: _____, 2000
                                        _____
11                                      Class Representative In *Kimpel v. Williams*

12 DATED: _____, 2000
                                        _____
13                                      Class Representative In *Kimpel v. Williams*

14 DATED: _____, 2000
                                        _____
15                                      Class Representative In *Kimpel v. Williams*

   DATED: _____, 2000
16                                      _____
                                        Class Representative In *Kimpel v. Williams*
17
   DATED: _____, 2000
18                                      _____
                                        Class Representative In *Kimpel v. Williams*
19
   DATED: _____, 2000
20                                      _____
                                        Class Representative In *Kimpel v. Williams*
21
   DATED: _____, 2000
22                                      _____
                                        Class Representative In *Kimpel v. Williams*
23
   DATED: _____, 2000
24                                      _____
                                        Class Representative In *Kimpel v. Williams*
25
   DATED: _____, 2000
26                                      _____
                                        Class Representative In *Kimpel v. Williams*
27
   DATED: _____, 2000
28                                      _____
                                        Class Representative In *Kimpel v. Williams*
                                                 Ex.A 34-40

1  signed signature pages shall be incorporated into this Agreement and have the same legal effect

2  as if the Plaintiff or Class Representative had signed the original copy of this Agreement.

3

4  DATED: 2/19 , 2000
   _____
   Class Representative In *Kimpel v. Williams*
5  (Ron Thomson)

6  DATED: _____ , 2000
   _____
7  Class Representative In *Kimpel v. Williams*

8  DATED: _____ , 2000
   _____
9  Class Representative In *Kimpel v. Williams*

10 DATED: _____ , 2000
   _____
11 Class Representative In *Kimpel v. Williams*

12 DATED: _____ , 2000
   _____
13 Class Representative In *Kimpel v. Williams*

14 DATED: _____ , 2000
   _____
15 Class Representative In *Kimpel v. Williams*

   DATED: _____ , 2000
   _____
16 Class Representative In *Kimpel v. Williams*

17
   DATED: _____ , 2000
18 _____
   Class Representative In *Kimpel v. Williams*

19
   DATED: _____ , 2000
20 _____
   Class Representative In *Kimpel v. Williams*

21
   DATED: _____ , 2000
22 _____
   Class Representative In *Kimpel v. Williams*

23
   DATED: _____ , 2000
24 _____
   Class Representative In *Kimpel v. Williams*

25
   DATED: _____ , 2000
26 _____
   Class Representative In *Kimpel v. Williams*

27
   DATED: _____ , 2000
28 _____
   Class Representative In *Kimpel v. Williams*

EX. A 35-47
39

1  signed signature pages shall be incorporated into this Agreement and have the same legal effect

2  as if the Plaintiff or Class Representative had signed the original copy of this Agreement.

3

4  DATED: 3 - 2 -, 2000          _____
                                 Class Representative In *Kimpel v. Williams*
5

6  DATED: _____, 2000      _____
                                 Class Representative In *Kimpel v. Williams*
7

8  DATED: _____, 2000      _____
                                 Class Representative In *Kimpel v. Williams*
9

10 DATED: _____, 2000      _____
                                 Class Representative In *Kimpel v. Williams*
11

12 DATED: _____, 2000      _____
                                 Class Representative In *Kimpel v. Williams*
13

14 DATED: _____, 2000      _____
                                 Class Representative In *Kimpel v. Williams*
15
   DATED: _____, 2000      _____
16                               Class Representative In *Kimpel v. Williams*
17
   DATED: _____, 2000      _____
18                               Class Representative In *Kimpel v. Williams*
19
   DATED: _____, 2000      _____
20                               Class Representative In *Kimpel v. Williams*
21
   DATED: _____, 2000      _____
22                               Class Representative In *Kimpel v. Williams*
23
   DATED: _____, 2000      _____
24                               Class Representative In *Kimpel v. Williams*
25
   DATED: _____, 2000      _____
26                               Class Representative In *Kimpel v. Williams*
27
   DATED: _____, 2000      _____
28                               Class Representative In *Kimpel v. Williams*

Ex. A 36-47
42996.1                          Page 28 of 30    38        2-16-00 Settlement Agreement

1 //

2 //

3 //

4 //

5 //

APPROVED AS TO FORM: _Ronald K Verceil_ 02-17-2000

6                        Class Representative in Kimpel v. Williams

                        THE PETERSEN LAW FIRM

7

8

DATED: _____, 2000        By:_____

9                                   GREGORY G. PETERSEN
                                    Attorneys for Plaintiffs and Class Counsel

10

11                              LIEBERT CASSIDY

12

13

DATED: _____, 2000        By:_____

14                                  PETER J. BROWN
                                    Attorneys for Defendants

15

16                              CITY OF LOS ANGELES

17

DATED: _____, 2000        By:_____

18                                  JAMES K. HAHN
                                    City Attorney, City of Los Angeles

19

20

21

22

23

24

25

26

27

28

D042996.01

EX.A 37-47
                                                        39

2-16-00 Settlement Agreement

1 execute this Agreement by their signatures. Each Plaintiff or Class Representative may execute
2 this Agreement in counterpart by signing a copy of the signature page for this Agreement. A
3 facsimile copy of a signature shall have the same force and effect as an original. Each of the
4 signed signature pages shall be incorporated into this Agreement and have the same legal effect
5 as if the Plaintiff or Class Representative had signed the original copy of this Agreement.

6

7 DATED: __3-1__, 2000        _Lorena G. Walsh_
                              Class Representative In *Kimpel v. Williams*
8                             LORENA G. WALSH
9 DATED: _____, 2000     _____
                              Class Representative In *Kimpel v. Williams*
10
11 DATED: _____, 2000    _____
                              Class Representative In *Kimpel v. Williams*
12
13 DATED: _____, 2000    _____
                              Class Representative In *Kimpel v. Williams*
14
15 DATED: _____, 2000    _____
                              Class Representative In *Kimpel v. Williams*
16
17 DATED: _____, 2000    _____
                              Class Representative In *Kimpel v. Williams*
18
19 DATED: _____, 2000    _____
                              Class Representative In *Kimpel v. Williams*
20
21 DATED: _____, 2000    _____
                              Class Representative In *Kimpel v. Williams*
22
23 DATED: _____, 2000    _____
                              Class Representative In *Kimpel v. Williams*
24
25 DATED: _____, 2000    _____
                              Class Representative In *Kimpel v. Williams*
26
27 DATED: _____, 2000    _____
                              Class Representative In *Kimpel v. Williams*
28

Page 29 of 31        2-16-00 Settlement Agreement

EX. A 38-47
40

1  execute this Agreement by their signatures. Each Plaintiff or Class Representative may execute

2  this Agreement in counterpart by signing a copy of the signature page for this Agreement. A

3  facsimile copy of a signature shall have the same force and effect as an original. Each of the

4  signed signature pages shall be incorporated into this Agreement and have the same legal effect

5  as if the Plaintiff or Class Representative had signed the original copy of this Agreement.

6

7  DATED: 2/18 , 2000 _____
   Class Representative In *Kimpel v. Williams*

8

9  DATED: _____, 2000 _____
   Class Representative In *Kimpel v. Williams*

10

11  DATED: _____, 2000 _____
    Class Representative In *Kimpel v. Williams*

12

13  DATED: _____, 2000 _____
    Class Representative In *Kimpel v. Williams*

14

15  DATED: _____, 2000 _____
    Class Representative In *Kimpel v. Williams*

16

17  DATED: _____, 2000 _____
    Class Representative In *Kimpel v. Williams*

18  DATED: _____, 2000 _____
19    Class Representative In *Kimpel v. Williams*

20  DATED: _____, 2000 _____
21    Class Representative In *Kimpel v. Williams*

22  DATED: _____, 2000 _____
23    Class Representative In *Kimpel v. Williams*

24  DATED: _____, 2000 _____
25    Class Representative In *Kimpel v. Williams*

26  DATED: _____, 2000 _____
27    Class Representative In *Kimpel v. Williams*

28

1

2  DATED: 2/17 , 2000            PHILLIP W EVANS

3                                Class Representative In *Kimpel v. Williams*

4  DATED: _____, 2000
                                 Class Representative In *Kimpel v. Williams*
5  DATED: _____, 2000
                                 Class Representative In *Kimpel v. Williams*
6

7  DATED: _____, 2000
                                 Class Representative In *Kimpel v. Williams*
8

9  DATED: _____, 2000
                                 Class Representative In *Kimpel v. Williams*
10

11 DATED: _____, 2000
                                 Class Representative In *Kimpel v. Williams*
12

13 DATED: _____, 2000
                                 Class Representative In *Kimpel v. Williams*
14

15 DATED: _____, 2000
                                 Class Representative In *Kimpel v. Williams*
16

17 DATED: _____, 2000
                                 Class Representative In *Kimpel v. Williams*
18

19 DATED: _____, 2000
                                 MICHAEL C. HUFF
20                               Class Representative In *Huff v. Parks*

21

22                               CITY OF LOS ANGELES

23 DATED: _____, 2000
                                 By:
24                                   JOHN FERRARO
                                     President, City Council City of Los Angeles
25

26 //

27 //

28

1 signed signature pages shall be incorporated into this Agreement and have the same legal effect
2 as if the Plaintiff or Class Representative had signed the original copy of this Agreement.

3
4 DATED: *March 13*, 2000        *Donald H. Westfall* #10786
5                                Class Representative In *Kimpel v. Williams*

6 DATED: _____, 2000       _____
7                                Class Representative In *Kimpel v. Williams*

8 DATED: _____, 2000       _____
9                                Class Representative In *Kimpel v. Williams*

10 DATED: _____, 2000      _____
11                               Class Representative In *Kimpel v. Williams*

12 DATED: _____, 2000      _____
13                               Class Representative In *Kimpel v. Williams*

14 DATED: _____. 2000      _____
15                               Class Representative In *Kimpel v. Williams*
16 DATED: _____, 2000      _____
17                               Class Representative In *Kimpel v. Williams*
18 DATED: _____, 2000      _____
19                               Class Representative In *Kimpel v. Williams*
20 DATED: _____, 2000      _____
21                               Class Representative In *Kimpel v. Williams*
22 DATED: _____, 2000      _____
23                               Class Representative In *Kimpel v. Williams*
24 DATED: _____, 2000      _____
25                               Class Representative In *Kimpel v. Williams*
26 DATED: _____, 2000      _____
27                               Class Representative In *Kimpel v. Williams*
28 DATED: _____, 2000      _____
                                 Class Representative In *Kimpel v. Williams*

EX. A 41-47
43

1  execute this Agreement by their signature. Each Plaintiff or Class Representative may execute

2  this Agreement in counterpart by signing copy of the signature page for this Agreement. A

3  facsimile copy of a signature shall have the same force and effect as an original. Each of the

4  signed signature pages shall be incorporated into this Agreement and have the same legal effect

5  as if the Plaintiff or Class Representative signed the original copy of this Agreement.

6

7  DATED: Feb 18 , 2000

8                                              Representative In *Kimpel v. Williams*
                                               Guy Juneau

9  DATED: _____, 2000

10                                             Class Representative In *Kimpel v. Williams*

11 DATED: _____, 2000

12                                             Class Representative In *Kimpel v. Williams*

13 DATED: _____, 2000

14                                             Class Representative In *Kimpel v. Williams*

15 DATED: _____, 2000

16                                             Class Representative In *Kimpel v. Williams*

17 DATED: _____, 2000

18                                             Class Representative In *Kimpel v. Williams*

19 DATED: _____, 2000

20                                             Class Representative In *Kimpel v. Williams*

21 DATED: _____, 2000

22                                             Class Representative In *Kimpel v. Williams*

23 DATED: _____, 2000

24                                             Class Representative In *Kimpel v. Williams*

25 DATED: _____, 2000

26                                             Class Representative In *Kimpel v. Williams*

27 DATED: _____, 2000

28                                             Class Representative In *Kimpel v. Williams*

1  execute this Agreement by their signatures. Each Plaintiff or Class Representative may execute

2  this Agreement in counterpart by signing one of the signature page for this Agreement. A

3  facsimile copy of a signature shall have the same force and effect as an original. Each of the

4  signed signature pages shall be incorporated into this Agreement and have the same legal effect

5  as if the Plaintiff or Class Representative had signed the original copy of this Agreement.

6

7  DATED: ___O2-19___, 2000       _____
                                  Class Representative In *Kimpel v. Williams*

8

9  DATED: _____, 2000        _____
                                  Class Representative In *Kimpel v. Williams*

10

11 DATED: _____, 2000        _____
                                  Class Representative In *Kimpel v. Williams*

12

13 DATED: _____, 2000        _____
                                  Class Representative In *Kimpel v. Williams*

14

15 DATED: _____, 2000        _____
                                  Class Representative In *Kimpel v. Williams*

16

17 DATED: _____, 2000        _____
                                  Class Representative In *Kimpel v. Williams*

18
   DATED: _____, 2000        _____
19                                Class Representative In *Kimpel v. Williams*

20
   DATED: _____, 2000        _____
21                                Class Representative In *Kimpel v. Williams*

22
   DATED: _____, 2000        _____
23                                Class Representative In *Kimpel v. Williams*

24
   DATED: _____, 2000        _____
25                                Class Representative In *Kimpel v. Williams*

26
   DATED: _____, 2000        _____
27                                Class Representative In *Kimpel v. Williams*

28

2-16-00 Settlement Agreement

00042996.01

Ex. A 43-47
45

1  execute this Agreement by their signatures. Each Plaintiff or Class Representative may execute

2  this Agreement in counterpart by signing a copy of the signature page for this Agreement. A

3  facsimile copy of a signature shall have the same force and effect as an original. Each of the

4  signed signature pages shall be incorporated into this Agreement and have the same legal effect

5  as if the Plaintiff or Class Representative had signed the original copy of this Agreement.

6

7  DATED: 3/24 , 2000          _____
                               Class Representative In *Kimpel v. Williams*

8                              Jeff P. Quinton

9  DATED: _____, 2000  _____
                               Class Representative In *Kimpel v. Williams*
10

11 DATED: _____, 2000  _____
                               Class Representative In *Kimpel v. Williams*
12

13 DATED: _____, 2000  _____
                               Class Representative In *Kimpel v. Williams*
14

15 DATED: _____, 2000  _____
                               Class Representative In *Kimpel v. Williams*
16

17 DATED: _____, 2000  _____
                               Class Representative In *Kimpel v. Williams*
18

   DATED: _____, 2000  _____
                               Class Representative In *Kimpel v. Williams*
19

20 DATED: _____, 2000  _____
                               Class Representative In *Kimpel v. Williams*
21

22 DATED: _____, 2000  _____
                               Class Representative In *Kimpel v. Williams*
23

24 DATED: _____, 2000  _____
                               Class Representative In *Kimpel v. Williams*
25

26 DATED: _____, 2000  _____
                               Class Representative In *Kimpel v. Williams*
27

28

Page 29 of 31

Ex. A 44-47
46

2-16-00 Settlement Agreement

1  execute this Agreement by their signatures.  Each Plaintiff or Class Representative may execute

2  this Agreement in counterpart by signing a copy of the signature page for this Agreement.  A

3  facsimile copy of a signature shall have the same force and effect as an original.  Each of the

4  signed signature pages shall be incorporated into this Agreement and have the same legal effect

5  as if the Plaintiff or Class Representative had signed the original copy of this Agreement.

6

7  DATED: ___2 / 22___, 2000

   _____
   Class Representative In *Kimpel v. Williams*

8         Song Suh

9  DATED: _____, 2000

   _____
   Class Representative In *Kimpel v. Williams*

10

11  DATED: _____, 2000

   _____
   Class Representative In *Kimpel v. Williams*

12

13  DATED: _____, 2000

   _____
   Class Representative In *Kimpel v. Williams*

14

15  DATED: _____, 2000

   _____
   Class Representative In *Kimpel v. Williams*

16

17  DATED: _____, 2000

   _____
   Class Representative In *Kimpel v. Williams*

18

19  DATED: _____, 2000

   _____
   Class Representative In *Kimpel v. Williams*

20

21  DATED: _____, 2000

   _____
   Class Representative In *Kimpel v. Williams*

22

23  DATED: _____, 2000

   _____
   Class Representative In *Kimpel v. Williams*

24

25  DATED: _____, 2000

   _____
   Class Representative In *Kimpel v. Williams*

26

27  DATED: _____, 2000

   _____
   Class Representative In *Kimpel v. Williams*

28

D042998.01

1  execute this Agreement by their signatures. Each Plaintiff or Class Representative may execute

2  this Agreement in counterpart by signing a copy of the signature page for this Agreement. A

3  facsimile copy of a signature shall have the same force and effect as an original. Each of the

4  signed signature pages shall be incorporated into this Agreement and have the same legal effect

5  as if the Plaintiff or Class Representative had signed the original copy of this Agreement.

6

7  DATED: _MARCH 24_____, 2000
                                   _____
8                                  Class Representative In *Kimpel v. Williams*
                                   Roger Ruggiero

9  DATED: _____, 2000
                                   _____
10                                 Class Representative In *Kimpel v. Williams*

11 DATED: _____, 2000
                                   _____
12                                 Class Representative In *Kimpel v. Williams*

13 DATED: _____, 2000
                                   _____
14                                 Class Representative In *Kimpel v. Williams*

15 DATED: _____, 2000
                                   _____
16                                 Class Representative In *Kimpel v. Williams*

17 DATED: _____, 2000
                                   _____
18                                 Class Representative In *Kimpel v. Williams*
   DATED: _____, 2000
19                                 _____
                                   Class Representative In *Kimpel v. Williams*
20
   DATED: _____, 2000
21                                 _____
                                   Class Representative In *Kimpel v. Williams*
22
   DATED: _____, 2000
23                                 _____
                                   Class Representative In *Kimpel v. Williams*
24
   DATED: _____, 2000
25                                 _____
                                   Class Representative In *Kimpel v. Williams*
26
   DATED: _____, 2000
27                                 _____
                                   Class Representative In *Kimpel v. Williams*
28
                                            EX.A 46-47
                                               48
   J0042996.01                     Page 29 of 31            2-16-00 Settlement Agreement

1  DATED: _____, 2000
                                          _____
2                                         Class Representative In *Kimpel v. Williams*

3  DATED: _____, 2000
                                          _____
4                                         Class Representative In *Kimpel v. Williams*

5  DATED: _____, 2000
                                          _____
6                                         Class Representative In *Kimpel v. Williams*

7  DATED: _____, 2000
                                          _____
8                                         Class Representative In *Kimpel v. Williams*

9  DATED: _____, 2000
                                          _____
10                                        Class Representative In *Kimpel v. Williams*

11 DATED: _____, 2000
                                          _____
12                                        Class Representative In *Kimpel v. Williams*

13 DATED: _____, 2000
                                          _____
14                                        Class Representative In *Kimpel v. Williams*

15 DATED: FEB. 18___, 2000
                                          _____
                                          MICHAEL C. HUFF
16                                        Class Representative In *Huff v. Parks*

17                                        CITY OF LOS ANGELES

18
19 DATED: 2/16___, 2000                   By: _____
                                          JOHN FERRARO
20                                        President, City Council City of Los Angeles

21
22 //
23 //
24 //
25 //
26 //
27 //
28 //

RECEIVED MAR 08

EX. A 47-47

49

Page 29 of 30                              2-16-00 Settlement Agreement

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

    I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is:  2755 Bristol Street, Suite No. 280, Costa Mesa, California 92626.

    On March 31, 2000, I served the foregoing document described as **STIPULATED JUDGMENT** on the interested parties in this action:

 X  by placing ___ the original _X_ a true copy thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Frederick N. Merkin | Peter J. Brown |
| 1800 City Hall East | Brian P. Walter |
| 200 North Main Street | Liebert Cassidy |
| Los Angeles, CA 90012 | 6033 W. Century Blvd., Suite 601 |
| | Los Angeles, California 90045-6415 |

Venetta S. Tassopulos, Special Master
United States Magistrate Judge (Retired)
3260 Beaudry Terrace
Glendale, CA 91208

_X_  As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at 2755 Bristol Street, Costa Mesa, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

___  (BY PERSONAL SERVICE)  I delivered such envelope by hand to the offices of the addressee.

    Executed on March 31, 2000, at Costa Mesa, California.

_X_  (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Diana L. Lawrence

3     50